Curtis WALLACE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00512–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 25, 1991.

Clyde Williams, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Timothy G. Taft, Jeanne Mayo, Asst. Harris Co. Dist. Attys., for appellee.

Before WILSON, COHEN and PRICE * JJ.

## OPINION

WILSON, Justice.

A jury found appellant guilty of forgery,[1] found two enhancement paragraphs true, and assessed punishment at 50 years confinement. We affirm.

On February 3, 1990, Houston Police Officer I.G. Gerardo was dispatched to a Kroger's grocery store to investigate a forgery. When he arrived, appellant was standing by the courtesy booth with the store manager and other store employees.

The manager told Gerardo that when appellant tried to cash a check at the courtesy booth, the employee handling the transaction discovered that the check was listed as stolen.

When he arrived at the store, Officer Gerardo took the check from the store manager, looked at it, and asked appellant about its ownership. Appellant stated that it was his. Gerardo then asked appellant where he got the check, and appellant stated that it was compensation for working four days, eight hours each day at eight dollars an hour. Gerardo compared the amount on the check with the amount appellant said he was paid, and the two did not match.

At that point, Gerardo informed appellant that the check was listed as stolen. Appellant then stated that a friend of his, Joe, had picked the check up for him. Upon further questioning by Gerardo about Joe, appellant stated that he did not know who Joe was. Gerardo continued questioning appellant about the check, and appellant then said he received it through the mail.

Officer Gerardo compared the number of the check with Kroger's list of stolen checks, and confirmed that it was among those listed as stolen. At that point, Gerardo arrested appellant, and took him to the station.

In point of error one, appellant argues that the trial court erred in admitting into evidence the oral statements he made to police prior to his arrest, while he was in the Kroger store. In point of error two, appellant complains of the trial court's action in overruling his motion to suppress. Fundamental to appellant's complaint is the assertion that Officer Gerardo should have administered *Miranda*[2] warnings to appellant before questioning him about the stolen check. As appellant cites the same authorities and makes the same arguments for both points of error, we will consider them together as one.

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Tex.Penal Code Ann. § 32.21 (Vernon 1989).

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990); *Cannon v. State*, 691 S.W.2d 664, 673 (Tex.Crim.App. 1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). Absent a clear abuse of discretion, the trial court's findings at the suppression hearing should not be disturbed on appeal. *Meek*, 790 S.W.2d at 620; *Dancy v. State*, 728 S.W.2d 772, 777 (Tex.Crim.App.1987), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

Appellant claims that from the moment he presented the stolen check, he was in custody; first in the "constructive custody" of the store employees, and then in the actual custody of Officer Gerardo. In further support of his contention, appellant claims that at the time of the questioning, Officer Gerardo had probable cause to arrest, and appellant was the only person under investigation. He argues that, because Officer Gerardo did not give appellant *Miranda* warnings prior to the questioning, the admission of the oral statements he gave while he was interrogated in the Kroger store constitutes reversible error. Appellant further contends that the admission of the oral statements was harmful to him, because they showed his knowledge of the forgery.

■ The failure to administer *Miranda* warnings before a custodial interrogation will render any statements made by the suspect inadmissible. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). However, *Miranda* warnings are not required for everyone questioned by the police, because the necessity of the administration of warnings depends on whether the person questioned is in custody. *Wicker v. State*, 740 S.W.2d 779, 786 (Tex.Crim.App.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988).

■ Multiple factors are used to determine whether "custody" exists when a motion to suppress is based on a challenge that a custodial interrogation occurred without the administration of *Miranda*

warnings. One factor used by courts is whether a reasonable person would believe his freedom was being deprived in a significant way. *Shiflet v. State*, 732 S.W.2d 622, 624 (Tex.Crim.App.1985). Other relevant factors are probable cause to arrest, subjective intent of the police, focus of the investigation, and subjective belief of the defendant. *Wicker*, 740 S.W.2d at 786. The Texas Court of Criminal Appeals has held that the determination of the existence of "custody" must be made after considering all the relevant circumstances. *Meek*, 790 S.W.2d at 620.

■ In the present case, Officer Gerardo testified that appellant was not under arrest, but Gerardo was going to complete his investigation, because he wanted to find out what was going on. When Gerardo arrived at the Kroger store, he assessed the situation. His interview of appellant was part of his investigation of the facts. Under these circumstances, appellant was not in custody, although he was not free to leave until Gerardo completed his investigation. *See Parker v. State*, 710 S.W.2d 146, 147 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

In *Parker*, several people informed a police officer that someone inside a store was attempting to cash stolen checks. *Parker*, 710 S.W.2d at 147. When the officer entered the store, the cashier handed him the two checks, and told him that Parker, who was standing nearby, had attempted to cash them. *Id.* The officer approached Parker and questioned him about where he had gotten the checks. *Id.* Parker said his girlfriend gave him the checks, but when asked who his girlfriend was, he said he didn't know. *Id.* Then, the officer noticed that one of the checks was altered, and placed Parker under arrest. *Id.*

The *Parker* court held that Parker was not in custody, even though the officer testified that Parker, while not under arrest, was not free to leave. *Parker*, 710 S.W.2d at 147. The court held that Parker was not in custody until the officer had probable cause to arrest, and probable cause did not arise until the officer heard Parker's explanation of where he got the checks, and found the explanation implausible. *Id.* The officer was trying to deter-

mine the facts of the situation, and his questioning of Parker was aimed at determining whether Parker was guilty of any wrongdoing. *Id.*

■ Here, there was no probable cause to arrest until Officer Gerardo investigated the forgery call by questioning appellant and the store employees. When questioned by Gerardo, appellant explained that he got the check from Joe, but then said he didn't know who Joe was, and changed his story, stating that he received the check through the mail. Appellant also offered the explanation that he received the check for working, but the figures he gave did not add up to the amount of the check. Appellant's conflicting stories about the check gave Gerardo probable cause to arrest. *See Parker,* 710 S.W.2d at 147. Gerardo's questioning of appellant, which elicited the conflicting stories, was investigatory. Appellant was not in custody, even though he was not free to leave. The officer was justified in temporarily detaining appellant for the purpose of investigation. *Id.*

Therefore, because appellant was not in custody, his statements made to Gerardo before the arrest were admissible. The law permits an officer a reasonable time to determine the facts of a given situation, and in this case, to find out whether there was some reasonable explanation for appellant's possession of the check. If such a reasonable explanation had been forthcoming, appellant would have been spared the indignity of arrest. Appellant's theory of law would require an officer to preemptively arrest before giving a citizen an opportunity to explain himself.

The trial judge did not abuse his discretion in overruling appellant's motion to suppress the oral statements, and later committed no error when admitting the same statements before the jury during the trial.

Points of error one and two are overruled.

In point of error three, appellant contends that the trial court erred in overruling his motion for directed verdict, because there was no evidence of his intent to harm or defraud another. Appellant challenges the lack of evidence only upon a single element of the proof required to establish forgery, conceding by implication the sufficiency of the evidence to support the conviction upon the remaining elements of the offense.

The general inquiry directed to a lack of evidence is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). Appellant contends that the evidence is insufficient to prove intent to harm or defraud another, because he made no false representations regarding himself or the maker of the check; he made no statements that indicated he was aware the check was forged; and he did not attempt to avoid apprehension.

■ In the present case, to prove the crime of forgery, the State was required to show that appellant (1) with intent to defraud or harm another, (2) passed (3) a writing (4) that purported to be the act of another, and (5) that other person did not authorize the act. *Williams v. State,* 688 S.W.2d 486, 488 (Tex.Crim.App.1985); TEX.PENAL CODE ANN. § 32.21 (Vernon 1989).

■ The intent to defraud or harm may be established by circumstantial evidence. *Williams,* 688 S.W.2d at 488. Proof of intent to defraud is also derivative of other elements. In the case of forgery, the culpable mental state requires proof of knowledge that the check is forged. *Id.* If the State proves that an actor has knowledge that a particular check is forged, proof of intent to defraud is inferred. *Id.* Further, if there is sufficient evidence to establish an actor's theft of the instrument ultimately forged, the evidence is deemed sufficient to show knowledge of the forgery, and therefore sufficient to show an intent to defraud or harm. *Palmer v. State,* 735 S.W.2d 696, 699 (Tex.App.—Fort Worth 1987, no pet.).

In the case before us, an employee of the Gamma Corporation testified to discovering a large amount of checks missing on or about January 24, 1990, approximately 10 days prior to appellant's arrest in the Kroger store. The employee also testified that a search of the company records revealed no relationship of any kind with appellant. There was also evidence that several of the missing checks had been cashed in other grocery stores by unknown parties. Finally, the check appellant attempted to pass in the Kroger store bore the signature of F. Gamma, a person unknown to the Gamma Corporation employee.

In *Palmer*, the State established circumstances of Palmer's guilt of stealing the check, by showing his possession was "personal, recent, unexplained, and involved a distinct and conscious assertion of right to the property by him." *Palmer*, 735 S.W.2d at 698. In the case at hand, appellant was in personal possession of the recently stolen check, asserted that he had a right to the check, but could not give a reasonable explanation of how he came to be in possession of the stolen check. In fact, appellant gave several explanations about why he had the check, some of which were conflicting.

Further, appellant lacked any type of relationship with Gamma Corporation, even though appellant was the named payee on the check. Although not conclusive, this evidence, when viewed in a light most favorably to the verdict, constitutes circumstances of appellant's guilt of theft of the check. *Palmer*, 735 S.W.2d at 698; *Ellard v. State*, 509 S.W.2d 622, 624 (Tex.Crim. App.1974). If the jury might infer that appellant stole the check, then the jury might also infer that appellant knew the check was forged. *Palmer*, 735 S.W.2d at 698. Therefore, there is sufficient evidence to conclude that appellant had the intent to defraud or harm another. *Id.*

Point of error three is overruled.

In point of error four, appellant claims that the trial court erred in overruling appellant's motion for directed verdict, when the complainant did not testify with respect to the city and county in which the check was presented.

The Rules of Appellate Procedure provide that the appellate court shall presume that venue was proved in the trial court, unless such matter was made an issue in the trial court or it otherwise affirmatively appears to the contrary from the record. Tex.R.App.P. 80(d). Appellant points us to no reference in the record where the failure of the State to prove venue was challenged. Further, from the record, there is evidence that venue was proper. The courtesy booth employee of Kroger's testified that her store is in Harris County, Texas, and that appellant was the person who presented the stolen check to her while she was working in the courtesy booth.

Point of error four is overruled.

The judgment is in all things affirmed.