COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-199-CR

 

 

ANTHONY OXFORD                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 396TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                           I.
INTRODUCTION








Appellant Anthony Oxford was sentenced to twenty
years=
imprisonment for aggravated robbery.  In
a single point, Oxford claims that the trial court erred by admitting into
evidence an audio recording of police questioning him.  Specifically, Oxford claims that the police
questioning violated article 38.22 of the Texas Code of Criminal Procedure and
that, consequently, the audio recording of the questioning was
inadmissible.  See Tex. Code Crim.
Proc. Ann. art. 38.22 (Vernon 2005).  We
will affirm.

                                          II.
BACKGROUND

Alejandra Olivos was in her car in a shopping mall
parking lot when Oxford and another man approached her.  The two men pointed a gun at Olivos, stole
her purse, and then ran away.  Two
bystanders proceeded to chase down Oxford and the other man involved.  One of the bystanders eventually caught
Oxford behind a nearby restaurant and detained him until the police arrived.








When the police arrived, they placed Oxford in
the backseat of a police car, but they did not handcuff him.  The police car was equipped with a video
camera that recorded sounds inside the car.[2]  While in the car, Oxford told Officer Gerald
Little that he witnessed the robbery, although he was not a participant.  Officer Little asked Oxford questions about
the robbery, which the video camera audibly recorded.  The officer did not give Oxford the statutory
warnings under article 38.22 before questioning him.  Olivios arrived at the scene and identified
Oxford as one of the men who robbed her, and Oxford was arrested.

The State charged Oxford with the offense of
aggravated robbery, to which he pleaded not guilty.  During trial, the State offered into evidence
the DVD from the video camera, which the trial court admitted over Oxford=s
objection.  The jury found Oxford guilty,
and the trial court sentenced him to twenty years=
imprisonment.

                                     III.
STANDARD OF REVIEW

A trial court=s
evidentiary rulings are reviewed on appeal under an abuse of discretion
standard.  See Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).  A trial court abuses its discretion when its
decision lies outside the zone of reasonable disagreement.  Casey v. State, 215 S.W.3d 870, 879
(Tex. Crim. App. 2007).  As long as the
trial court=s ruling falls within the zone
of reasonable disagreement, we will affirm its decision.  Moses v. State, 105 S.W.3d 622, 627 (Tex.
Crim. App. 2003).

                                 0IV.  CUSTODIAL INTERROGATION








In his only point on appeal, Oxford argues that
the police took him into custody when they placed him in the back of the police
car and that, therefore, Officer Little=s
questioning constituted a custodial interrogation.  Consequently, he argues that the police
should have given him the specific warnings set forth in article 38.22 of the
code of criminal procedure before questioning him.  See Tex. Code Crim. Proc. Ann. art.
38.22.  Because he was not given those
warnings, Oxford claims that the recording should have been excluded from
evidence.  The State argues that Oxford
was not in custody or subject to interrogation during the recording.

The prosecution may not use statements, whether
exculpatory or inculpatory, stemming from the custodial interrogation of the
defendant unless it demonstrates the use of procedural safeguards effective to
secure the Fifth Amendment privilege against self-incrimination.  Miranda v. Arizona, 384 U.S. 436, 444,
86 S. Ct. 1602, 1612 (1996); Miller v. State, 196 S.W.3d 256, 267 (Tex.
App.CFort
Worth 2006, pet. ref=d).  Article 38.22 requires that certain warnings
must be given to a defendant before the defendant=s oral
statements can be used at trial; however, this requirement only applies when
the defendant=s statements are made during a
custodial interrogation.  See Tex.
Code Crim. Proc. Ann. art. 38.22.








Custodial interrogation is defined as Aquestioning
initiated by law enforcement officers after a person has been taken into
custody or otherwise deprived of his freedom of action in any significant way.@  Miranda, 384 U.S. at 444, 86 S. Ct. at
1612 (1966).  Four factors relevant to
determining whether a person is in custody are the (1) probable cause for
arrest, (2) subjective intent of the police, (3) focus of the investigation,
and (4) subjective belief of the defendant. 
Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App.
1996).  Factors two and four have become
irrelevant except to the extent that they may be manifested in the words or
actions of police officers; therefore, the custody determination is based
entirely upon objective circumstances.  Stansbury
v. California, 511 U.S. 318, 322B23, 114
S. Ct. 1526, 1528B29 (1994); Dowthitt, 931
S.W.2d at 254.








Turning to the custody determination, Texas
courts have identified four general situations which may constitute custody:
(1) when the suspect is physically deprived of his freedom of action in any
significant way, (2) when law enforcement officers tell a suspect that he
cannot leave, (3) when law enforcement officers create a situation that would
lead a reasonable person to believe that his freedom of movement has been
significantly restricted, and (4) when there is probable cause to arrest and
law enforcement officers do not tell the suspect that he is free to leave.  See, e.g., Arthur v. State, 216
S.W.3d 50, 57 (Tex. App.CFort Worth 2007, no pet.)
(citing Dowthitt, 931 S.W.2d at 255). 
In the first three situations, the restrictions upon freedom of movement
must amount to the degree associated with an arrest as opposed to an
investigative detention.  Dowthitt,
931 S.W.2d at 255 (citing Stansbury, 511 U.S. at 322B23, 114
S. Ct. at 1528B29).  In the fourth situation, the officers=
knowledge of probable cause must be manifested to the suspect.  Id. 
The law permits an officer a reasonable time to delay potential
witnesses or suspects to determine the facts of a given situation.  See Parker v. State, 710 S.W.2d 146,
147 (Tex. App.CHouston [14th Dist.] 1986, no
pet.).








Here, when Officer Little placed Oxford in his
police car, the police had just recently arrived at the scene and were unsure
as to the details of the robbery.  Before
Officer Little asked Oxford any questions, Oxford said that he had simply
walked up to another robbery in progress and that he was not a participant in
the robbery.  Officer Little=s
questions then focused on what Oxford witnessed and the identity of the
robber.  See Dowthitt, 931 S.W.2d
at 254.  The officer was attempting to
obtain information about the robbery in general and determine who was involved.
 See id.  Oxford was not handcuffed during this
questioning, and Officer Little testified that Oxford was not under arrest and
that he did not believe he had probable cause to arrest Oxford at that
time.  See Parker, 710 S.W.2d at
147 (determining that defendant was not in custody when he was not arrested,
even though he was detained by officer for questioning and not free to leave); Skinner
v. State, No. 01-95-00576-CR, 1996 WL 227404, at *2 (Tex. App.CHouston
[1st Dist.] May 2, 1996, no pet.) (not designated for publication) (noting that
detention in a locked squad car does not in and of itself constitute an
arrest).  In fact, Oxford himself
testified that he believed he would be free to leave after the questioning was
complete.  Oxford was not handcuffed and
placed under arrest until after Olivos identified him as one of the robbers,
then the police had probable cause to arrest him.  See Gamble v. State, No.
02-05-00457-CR, 2006 WL 3334229, at *3B4 (Tex.
App.CFort
Worth Nov. 16, 2006, pet. ref=d) (not
designated for publication) (holding that officer did not have probable cause
to arrest defendant until after a reasonable time of questioning, so defendant
was not in custody until arrested). 
After his arrest, the police did not ask him any more questions on the
recording.

Oxford was not in custody at the time of the
audio recording and, consequently, Officer Little=s
questioning was not a custodial interrogation. 
See Montgomery, 810 S.W.2d at 391.  Because specific warnings are only required
to be given before a custodial interrogation, we hold that the trial court did
not abuse its discretion by allowing the audio recording to be admitted into
evidence.  See Tex. Code Crim. Proc.
Ann. art. 38.22, ' 5; Montgomery, 810
S.W.2d at 391.

                                        V.
HARM ANALYSIS








Even if the trial court erred by admitting the
audio recording, any error was harmless. 
Article 38.22, section 3 of the code of criminal procedure is a
procedural evidentiary rule rather than a substantive exclusionary rule.  Davidson v. State, 25 S.W.3d 183, 186
(Tex. Crim. App. 2000).  Therefore, we
apply rule 44.2(b) and disregard the error if it did not affect Oxford=s
substantial rights.  Tex. R. App. P.
44.2(b); see Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526
U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639, 642B43 (Tex.
App.CFort
Worth 1998, pet. ref=d).

A substantial right is affected when the error
had a substantial and injurious effect or influence in determining the jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d at
643.  Conversely, an error does not
affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon v. State, 49 S.W.3d 356, 365
(Tex. Crim. App. 2001); Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998).








In making this determination, we review the
record as a whole, including any testimony or physical evidence admitted for
the jury=s
consideration, the nature of the evidence supporting the verdict, and the
character of the alleged error and how it might be considered in connection
with other evidence in the case.  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  We may also consider the jury instructions,
the State=s theory and any defensive
theories, whether the State emphasized the error, closing arguments, and even
voir dire, if applicable.  Id. at
355B56.








Here, the jury heard ample testimony to determine
that Oxford was guilty of aggravated robbery. 
Olivos identified Oxford as one of her robbers shortly after the
robbery.  She testified that he stole her
purse from her car.  The jury heard
testimony that the police found Olivos=s cell
phone in the backseat of the same police car where Oxford had been detained and
found receipts from purchases made by Olivos in Oxford=s
shoes.  Oxford himself testified that he
intended to rob someone that night and that he knew a gun would be
involved.  Oxford further admitted that
he originally lied to Officer Little on the audio recording about not being
involved in the robbery but that he was now telling the truth about stealing
Olivos=s purse
at gunpoint.[3]  Thus, after carefully reviewing the record
and performing the required harm analysis under rule 44.2(b), we conclude that,
in the context of the entire case against Oxford, any error in the trial court=s
admission of the audio recording did not have a substantial or injurious effect
on the jury=s verdict and did not affect
Oxford=s
substantial rights.  See King, 953
S.W.2d at 271.  Thus, even assuming
error, we disregard it.  See Tex.
R. App. P. 44.2(b).

                                          VI.
CONCLUSION

Having overruled Oxford=s single
point, we affirm the trial court=s
judgment.

 

SUE
WALKER

JUSTICE

 

PANEL:  WALKER, MCCOY, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 19, 2009












[1]See Tex. R. App. P. 47.4.





[2]The video portion of the
recording remained focused on the front exterior of the car throughout the
questioning.





[3]Oxford argues that the
introduction of the audio recording compelled him to testify, allowing the
State to introduce his prior convictions. 
But we cannot see how the admission of the audio recordingCin which Oxford never
admitted to the robberyCcompelled him to testify
that he did, in fact, rob Olivos.